### Smith v. Smith.

5-1916                                          328 S. W. 2d 133

Opinion delivered October 19, 1959.

*Vol T. Lindsey*, for appellant.

*Bryce Ballinger*, Miami, Oklahoma, *Jeff Duty*, and *Claude Duty*, for appellee.

GEORGE ROSE SMITH, J. This is a suit by the appellee, Dema E. Smith, to quiet her title to three parcels of land in Benton county. She contends that she and her husband, Wesley M. Smith, owned the lands as tenants by the entirety and that she succeeded to the title upon her husband's death in 1957. The appellant, Wesley's sister and sole heir at law, denies that an estate by the entirety existed and insists that the three parcels were owned by Wesley alone, so that his widow is entitled only to her dower interest. The chancellor awarded the lands to the widow, holding that a tenancy by the entirety was created by a written agreement executed on October 1, 1955, by Wesley and Dema Smith

and by Earl T. and Minnie G. Wayne. The proper construction of that agreement is the decisive issue in the case.

All the facts are stipulated. Before his marriage to the appellee in 1954 Wesley Smith had lived for several years in the home of his friends, Mr. and Mrs. Wayne. In 1950 and 1951 Smith, a man of substantial means, purchased the three parcels now in dispute, with an oral understanding that the Waynes were to have an interest in the properties. One or both of the Waynes were named as grantees in each of the deeds, but in the trial court the Waynes, who were made defendants, asserted no claim under the deeds and conceded that their interest in the lands was only that set forth in the contract of October 1, 1955. The chancellor's decree protected the Waynes' interest as recited in the contract, and no one has appealed from that part of the decree.

When the Smiths and the Waynes executed the contract upon which this case turns the title to each of the three parcels was as follows: (a) One parcel, the apartment house property, had been paid for in full by Smith, and at his direction the sellers had conveyed that parcel to Earl T. Wayne and Wesley M. Smith. (b) Another parcel, the clubhouse property, had been partly paid for by Smith, and a deed to Earl T. and Minnie G. Wayne was being held in escrow by a Springdale bank, delivery to be made upon the payment of the final annual installment of the purchase price in 1959. (c) The third parcel, the farm property, had been partly paid for by Smith, and a deed to Wesley M. Smith and Earl T. Wayne was being held in escrow, delivery to be made upon the payment of the final annual installment on October 1, 1955.

On the date just mentioned Smith paid the last installment on the third parcel and directed that the deed in escrow be destroyed and that the sellers execute a new deed to Wesley M. and Dema E. Smith, which was done. At the same time the Smiths and the Waynes

undertook to define their respective interests in the three parcels by executing the following instrument:

"Agreement.

"This agreement, made and entered into this October 1, 1955, by and between Wesley M. Smith and Dema E. Smith, husband and wife, hereinafter referred to as first party, and Earl T. Wayne and Minnie G. Wayne, husband and wife, hereinafter referred to as second party, witnesseth:

"In confirmation of original oral agreement and oral or written agreements since then, with reference to purchase of three properties in Benton County, Arkansas, consisting of two residence properties in Rogers, Arkansas, and one farm, described as follows: [Here appears the legal description of each parcel, together with a statement of the original cost of each parcel]. It is herein understood and agreed by and between the parties that first party is to pay the purchase price for each property as and when they become due.

"Second party agrees to manage and supervise all property above described in cooperation with first party. He is to collect rentals, supervise rental of the property, pay taxes and repair bills from the income received from rentals until such time as any or all of the properties are sold or disposed of. Second party agrees to maintain all properties in good repair. If any property is sold, first party is to be reimbursed his entire investment in each property. Thereafter second party is to share 50-50 or in equal parts in any and all money received over and above the original cost of the property. When first party has been reimbursed his original investment, then any income to the above described properties shall be divided equally between the parties over and above cost of maintenance. No property shall be sold at a loss, nor shall it be sold at a price lower than a fair prevailing profit-yielding price that is mutually agreed upon. Should any money accumulate from rentals of the above properties, first party is to receive any amount over necessary expenses

and any money he receives from such rentals shall reduce the original cost of the property to that extent.

"This confirmation agreement is accepted by Earl T. and Minnie G. Wayne and Wesley M. Smith.

"In witness whereof we have hereunto set our hands and notarial seal this 1st day of October, 1955.

> Wesley M. Smith, First Party
> Dema E. Smith, his wife
> Earl T. Wayne, Second Party

Accepted:
    Earl T. Wayne
    Minnie G. Wayne

(Acknowledgment.)"

We are unable to agree with the chancellor's conclusion that this contract created a tenancy by the entirety. It seems quite apparent that the dominant motive of the Smiths and the Waynes was to reduce to writing the oral agreements by which the Waynes' interest in the three parcels was actually much smaller than their ostensible interest under the wording of the deeds. The agreement twice refers to its confirmatory nature; every operative provision deals with the reciprocal rights of Smith and the Waynes rather than with rights between Smith and his wife. Dema Smith was evidently made a party to the contract in order to bind her to a recognition of the rights vested in the Waynes; she was not joined for the purpose of being made a grantee.

In discovering an intention to create an estate by the entirety the chancellor relied largely upon the fact that the first paragraph of the agreement refers to Mr. and Mrs. Smith as the first party. We are unwilling to attribute such a far-reaching substantive effect to what we regard as merely a preliminary designation of the parties. If Wesley Smith sought to use this contract with the Waynes as a vehicle for conveying to his

wife an interest in the properties he could, and we think he should, have inserted language making his intention at least reasonably clear. In the absence of such language we do not think a precedent should be set by which an estate by the entirety might spring from any casual reference to a husband and wife in a deed, mortgage, lease, or other instrument affecting the title to land.

The decree is affirmed as to the third parcel, the farm, for this tract was conveyed to Wesley and Dema Smith, husband and wife. That deed undeniably created an estate by the entirety, subject to the rights of the Waynes as recited in the contemporaneous agreement. But with respect to the other two parcels the decree must be reversed and the cause remanded for the entry of a decree not inconsistent with this opinion.